UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(CAMDEN VICINAGE)

**WEISBERG LAW, P.C.**
MATTHEW B. WEISBERG
7 SOUTH MORTON AVE.
MORTON, PA  19070
610-690-0801

| | |
|---|---|
| Daniel Donnelly<br>39 Churchtown Road<br>Pennsville, NJ 08070 | :<br>:<br>:<br>: |
| Plaintiffs, | :<br>: |
| v. | :<br>: |
| Daniel Guerriero<br>1412 Oxford Valley Road<br>Levittown, PA 19056 | :<br>:<br>:<br>: |
| Elenor Guerriero<br>1412 Oxford Valley Road<br>Levittown, PA 19056 | :<br>:<br>:<br>: |
| Steve Ruffo  individually<br>and d/b/a DES Title Agency, Inc.<br>4905 Hamilton Drive<br>Voorhees, NJ 08043 | :<br>:<br>:<br>:<br>: |
| DES Title Agency, Inc.<br>c/o Steve Ruffo<br>4905 Hamilton Drive<br>Voorhees, NJ 08043 | :<br>:<br>:<br>:<br>: |
| Default Express Services, Inc.<br>4905 Hamilton Drive<br>Voorhees, NJ 08043 | :<br>:<br>:<br>: |
| Joseph Semptimphelter individually<br>and d/b/a JTS Asset Group<br>11 Winterset Lane<br>Marlton, NJ 08053 | :<br>:<br>:<br>: |
| Sharon Summers Keller, individually<br>and d/b/a MidAtlantic Capital<br>2294 Staffordshire Road | :<br>:<br>: |

CIVIL ACTION NO.: 10-3240

JURY OF TWELVE (12) JURORS DEMANDED

| | |
|---|---|
| Furlong, PA 18925 | : |
| | : |
| Samantha Associates, Inc. | : |
| 225 Lincoln Highway | : |
| Fairless Hills, PA 19030 | : |
| | : |
| Richard W. Hoy Associates, P.C. | : |
| 1518 Walnut St., Ste. 1600 | : |
| Philadelphia, PA 19102 | : |
| | : |
| David K. Lehman, Esquire | : |
| 1518 Walnut St., Ste. 1600 | : |
| Philadelphia, PA 19102 | : |
| | : |
| Bank of America, N.A. | : |
| 401 N. Tryon St. | : |
| Charlotte, NC 28255 | : |
| | : |
| JOHN DOE 1 | : |
| Defendants. | : |

## **AMENDED (AS TO CAPTION) SECOND AMENDED COMPLAINT**

**I.  Preliminary Statement**

1. This is an action for an award of attorney's fees and costs, compensatory, statutory, treble and punitive damages, also seeking equitable, injunctive and other relief, for Defendants' Foreclosure Rescue Scam, deed conversion, unfair or deceptive acts and practices in violation of the New Jersey Consumer Fraud Act ("CFA"), negligence, conspiracy and/or aiding and abetting same.

2. Individually, jointly and/or severally, Defendants are liable to Plaintiff for, but not limited to, the below causes of action and aforesaid remedies, for the reasons stated, which reasons are currently known, upon information and/or belief, and/or will be proven in discovery and/or at trial.

3. At all times material, Plaintiff here reserves the right to rely on the "Discovery Rule" and/or the Doctrine(s) of Equitable Tolling/Fraudulent Concealment, respectively.

## II. Jurisdiction and Venue

4. Jurisdiction in this Honorable Court is based on federal question conferred by 28 U.S.C. §1331; supplemental jurisdiction over state law claims is granted by 28 U.S.C. §1367.

5. Venue lies in this District in that the events giving rise to this claim occurred here, at least one (1) Defendant resides, maintains a principle place of business, and/or does business here, and/or the subject of this action is situated within this district.

## III. Parties

6. Plaintiff, Daniel Donnelly is an adult individual currently residing with his wife, Samantha Donnelly, and their children at the above-captioned address [hereinafter "the property"].

7. Defendant, BANK OF AMERICA, N.A. ("BOA"), is the originator of plaintiff's disputed "rescue" mortgage loan as described hereinafter.

8. Defendants, Daniel and Elenor Guerriero ("Guerriero") are husband and wife and are adult individuals residing at the above captioned address.

9. Defendant, Samantha Associates, Inc. is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania and at all times material hereto had a corporate headquarters at the above captioned address. Defendant Samantha is now believed to have abandoned its prior office address and operates out of its principal, Robert J. Truck's residence address.

10. Defendant John Doe 1, is a natural person believed to be an individual by the legal name of Robert J. Truck, principal of defendant Samantha Associates, Inc. ("Truck"), who does business at the above captioned address and at all times material acted individually and/or doing business as Samantha Associates, Inc.

11. Joseph Semptimphelter individually and d/b/a JTS Asset Group, LLC is an adult individual residing at 11 Winterset Lane, Marlton, NJ 08053. Semptimphelter is the corporate principal of defendant JTS and an employee of defendant DES Title Agency.

12. JTS Asset Group LLC is a defunct corporation duly organized under the laws of the State of New Jersey.

13. Defendant, Steve Ruffo, is an individual residing at the above captioned address and at all times material hereto acted in a dual capacity as President of defendant DES Title Agency, Inc. and as a principal of defendant Default Express Services Inc.

14. DES Title Agency, Inc., is a defunct corporation duly organized under the laws of the State of New Jersey which acted as title company and closing agent for residential real estate loan transactions including the transaction described and disputed herein.

15. Default Express Services Inc. is a company is a corporation duly organized under the laws of the State of New Jersey which advertises itself as providing various real estate related services.

16. Sharon Summers Keller ("Keller") is an individual formerly employed by mortgage broker MidAtlantic Capital residing at 2294 Staffordshire Road, Furlong, PA 18925.

17. Defendant Richard W. Hoy Associates, P.C. ("Law Firm"), with principal offices at 1518 Walnut St., Suite 400, Philadelphia, PA 19102, is a professional corporation duly authorized to conduct business in the Commonwealth of Pennsylvania.

18. Defendant, David K. Lehman ("Attorney Lehman"), is an adult individual engaged in the practice of law doing business as an attorney admitted to practice of law in the Commonwealth of Pennsylvania at the Law Offices of Richard Hoy and Associates, 1420 Walnut St., Suite 400, Philadelphia, PA 19102.

19. At all times material, Defendants Joseph Semptimphelter, Steve Ruffo, and John Doe 1, conducted business under the corporate guise of their respective associated corporations, JTS, DES and Default Express, and Samantha Associates, over which each defendant exercised complete dominion and control over the respective corporate entity to create the foreclosure rescue scam transaction discussed and disputed herein.

20. Semptimphelter, Ruffo, Samantha, and John Doe 1 are sometimes referred to herein as "the Rescue Defendants".

21. At all times material, Defendants were acting individually, within the course and scope of their authority and employment, and/or through their agents, servants, work-persons, and/or employees, respectively.

22. At all times material, Defendants acted individually and/or on behalf of each other as agents, servants, work-persons, alter ego's, and/or employees thereof.

23. Defendants are liable to Plaintiff, directly, indirectly, contractually, expressly, implicitly, as a matter of law and/or vicariously, including but not limited to liability via a third-party beneficiary relationship, and/or via conspiring and/or aiding and abetting.

    IV.    **Factual Allegations**

    A.    **The Foreclosure**

24. In or around 2007, Plaintiff, Daniel Donnelly informally appointed his wife Plaintiff, Samantha Donnelly, to take care of the family's finances because his employment forced him to work very long hours.

25. Plaintiff's wife was charged with paying the bills, including the mortgage payment on the property.

26. The deed to plaintiffs' home and the mortgage loan thereon are both in plaintiff's name.

27. Plaintiff's wife failed to make the mortgage payments and unbeknownst to Daniel, plaintiffs fell into arrears on their mortgage loan.

28. Without Daniel's knowledge insofar as Samantha was opened all mail and paid all bills concerning the property on Plaintiff's behalf, non-party mortgage lender, Wells Fargo, N.A., filed a complaint in foreclosure against Plaintiff.

**B.    Setting up the Rescue Transaction Scam**

29. In or around May, 2007, John Doe 1 of Samantha Associates, Inc., "cold called" Plaintiff's wife to discuss the mortgage foreclosure and represented to her that he could help her keep their home.

30. Plaintiff's wife did not reveal to plaintiff the foreclosure or her attempts to cure it, because, upon information and belief, she wanted to avoid marital discord by fixing the problem without his knowledge.

31. Plaintiff's wife advised John Doe 1 of defendant Samantha that her husband was sick and could not participate in any discussions with defendant Samantha concerning the property.

32. On or about April, 2007, John Doe 1 of defendant Samantha advised Plaintiff's wife in a phone call to file a bankruptcy petition to stop the foreclosure litigation to allow them to save her home from sheriff sale.

33. On or about April 20, 2007, without plaintiff's knowledge Plaintiff's wife filed a bankruptcy petition in the New Jersey United States Bankruptcy Court on behalf of her and plaintiff, D.N.J. Bankr. No. 07-15469.

34. At the instruction of John Doe 1 of defendant Samantha, Plaintiff's wife signed the bankruptcy petition on behalf of plaintiff writing "P.O.A" next to his name to indicate to the court that she had power of attorney to execute the document on plaintiff's behalf.

35. John Doe 1 of defendant Samantha told Plaintiff's wife that "the lawyer" would take care of the power of attorney later.

36. Upon information and belief, the lawyer referenced by John Doe 1 of Defendant Samantha is defendant Lehman who was hired by defendants Truck and Samantha to protect their interests in the transaction.

37. At no time did plaintiff sign a power of attorney of any kind in favor of his wife nor did any such power of attorney document from plaintiff to his wife, bona fide or otherwise, exist at the time of the bankruptcy petition filing.

38. On or about April 27, 2007, John Doe 1 of defendant Samantha called plaintiff's wife to advise her that:

    a. she should attend a meeting on May 10, 2007, to sign documents to save her home;

    b. she should dismiss the bankruptcy petition because it was no longer necessary and advise the court that plaintiff had been in a coma and that she now had the money to save her home.

### C. The Sale/Leaseback Transaction

39. On or about May 10, 2007, plaintiff attended what turned out to be a loan closing involving the sale of the property to defendants Guerriero (hereinafter referred to as "the transaction").

33. The closing was attended by two (2) females, who introduced themselves as being affiliated with defendant Samantha, and defendant Guerriero.

34. Plaintiff's wife was presented with the following documents which she saw on the date of closing for the first time:

    a) Deed from plaintiff "by his Attorney in fact, Samantha Donnelly" to Guerriero witnessed and notarized by defendant Law Firm;

    b) Lease Purchase Agreement between plaintiff and Guerriero involving monthly rent payments in the amount of $1,167.54 and right to repurchase the premises for $175,000.00 after one (1) year;

    c) Promissory Note from Guerriero to plaintiff in which $35,000 is promised to be paid to plaintiff by Guerriero subject to plaintiff adhering to the terms of the aforementioned Lease Purchase agreement attached as an exhibit to the Note;

    d) Agreement of sale between plaintiff and Guerriero.

35. At closing, plaintiff's wife received a Xerox copy of a Power of Attorney form dated May 3, 2007 (hereinafter "POA"), in which plaintiff's signature was forged and the forger's signature notarized by Defendant Keller sometime prior to the closing.

36. At the instruction of the Samantha representatives present at closing, Plaintiff's wife signed the aforementioned deed, note, and lease documents as attorney-in-fact for plaintiff pursuant to the aforementioned forged POA document.

37. The HUD1 for the transaction contained the following pertinent disbursements:

   a) $4,600 in broker and related fees to Keller and MidAtlantic Capital;

   b) $2,500 payable to defendant Lehman from seller's, i.e. plaintiff's proceeds from sale;

   c) $8,500 payable to defendants Truck and Samantha as per the Lease to "coordinate the deal" between plaintiff and Guerriero;

   d) $4,670.16 payable to "Beverly Associates" represented as escrow from seller's funds of four (4) months lease payments under the terms of the aforesaid lease;

   e) $45,602 portrayed on the HUD-1 as down money from defendant Guerriero;

   f) $46,398 payable to defendant Semptimphelter via "JTS Asset Group LLC";

   g) $3,995 payable to Default Services for "conv fee" for which the services rendered are unknown.

38. Upon information and belief, $45,602 portrayed on the HUD-1 as down money from defendant Guerriero, was in fact paid into the DES escrow account by JTS with funds borrowed from the credit line of defendant Semptimphelter.

39. Upon information and belief, immediately after the closing, DES paid JTS $46,398 from which Semptimphelter retained roughly $800.00 for making the fictitious down payment which qualified the transaction for financing by BOA.

40. Upon information and belief, Bank of America's loan file contained no invoice or other explanation of JTS Asset Group's services.

41. Plaintiff's wife has paid to Guerriero the lease payments from June, 2007 to the present from her and plaintiff's personal funds.

42. Plaintiff never received any funds from the transaction.

43. Upon information and belief, "Beverly Associates" is a fictitious entity created by defendants Truck and Samantha Associates to act as an ostensible escrow agent and lend a pretext of legitimacy to its foreclosure rescue transactions.

44. Based on the foregoing information, plaintiff believes defendants John Doe 1 and Samantha converted the escrow funds to their own use.

**D.    Post-Closing**

45. Plaintiff did not discover the transaction occurred until July, 2008 when the sale transaction was publicly posted in the Salem County newspaper, Sunbeam, which was noticed by a friend of plaintiff's who called plaintiff's attention to it.

46. Prior to this "sale", Plaintiff's monthly payments were approximately $1,083.00.

47. After finding out that his wife completed this transaction without his authority , permission or consent, Plaintiff has nonetheless continued to make the monthly payments to Geurriero to stay in his home.

48. As a result of the foregoing, Plaintiff has suffered injuries including, but not limited to:  (1) pain and suffering, including emotional distress and embarrassment; (2) damage

to credit rating and/or credit defamation; (3) financial loss(es), including lost opportunity(ies) and/or equity; (4) loss of title to the premises; (5) attorneys fees and court costs; and/or (6) such other and further injuries as will be determined in discovery and/or at trial, including aggravation of a pre-existing condition(s).

  E.  **Notice of Irregular Mortgage Transaction**

49. Unlike a conventional sale of property where there is equity above existing liens, plaintiff received no cash from the alleged sale transaction.

50. There was no invoice, escrow agreement or other written explanation of the JTS debt which consumed almost 25% of the loan funds from Bank of America.

51. Upon information and belief, Defendant Bank of America had a Quality Control and/or Fraud Prevention department within their business operations that monitored and/or established written fraud prevention/risk management guidelines for screening consumer loans during the underwriting process.

52. Upon information and belief, the aforesaid department(s) and the underwriters for Bank of America knew or should have known that the Transaction involved fraud and was otherwise irregular for the aforesaid and following:

  (a) Plaintiff's existing mortgage loan was delinquent and in foreclosure status;

  (b) Plaintiff would continue to occupy the property under a lease/purchase agreement between Plaintiff and the buyer to take effect immediately proceeding the sale;

  (c) Under the lease/purchase agreement, Plaintiff would continue to make most repairs to the property as an owner would;

  (d) There was no prior listing of the property or involvement of a real estate agent in the sale;

  F.  **Defendants' Involvement in other Foreclosure Rescue Scams**

53. Defendant Lehman is currently the defendant in two (2) other lawsuits involving theft of home equity in a foreclosure rescue scam, <u>Cann v. Lehman et al.</u>, USED Pa. 10-921 and <u>Graziosi v. Lehman et al.,</u> USED Pa. 10-1952 et al.  Robert J. Truck is also a defendant in the <u>Graziosi</u> matter.

V.  **Causes of Action**

<u>**COUNT I – COMMON LAW FRAUD/**</u><br>**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**<br>N.J.S.A. 56:8-2 *et seq.*

54. Plaintiff repeats and re-alleges all paragraphs above as if fully set forth herein.

55. Using material misrepresentation, affirmatively or by omission, Defendants induced plaintiff to enter into an illegal and financially devastating transaction.

56. Defendants made the aforesaid misrepresentations to plaintiff's wife on the premise that she was plaintiff's legal representative and therefore made the aforesaid misrepresentations to plaintiff:

  a) John Doe 1, Samantha, Law Firm, Lehman, and Keller misrepresented that plaintiff's wife could act for plaintiff in the transaction on the basis of forged documents without consulting him directly as to his agreement to the transaction;

  b) John Doe 1, Law Firm, Lehman, and Samantha misrepresented that plaintiff's wife could act for plaintiff in the bankruptcy by making false allegations of legal powers to a U.S. Bankruptcy Court;

c) Truck, Samantha, Lehman, Law Firm, DES, and Semptimphelter misrepresented that Lehman rendered legal services that were agreed to by plaintiff for $2,500 payable from proceeds of the sale;

d) All Defendants excluding BOA misrepresented that $8,500 payable to Truck was for legitimate services rendered to plaintiff when, in fact, it represented theft of equity payable to Truck and Samantha to set up the scam;

e) All Defendants excluding BOA misrepresented that $4,670.16 payable to "Beverly Associates" was kept in escrow from seller's funds to pay the lease when, in fact, Truck and Samantha converted the funds;

f) All Defendants excluding BOA misrepresented that $45,602 portrayed on the HUD-1 as down money from defendant Guerriero when it was actually funds from a personal credit line of defendant Semptimphelter funneled via JTS into the transaction;

g) All Defendants excluding BOA misrepresented by omission that roughly $800.00 in loan funds were paid to JTS and Semptimphelter for putting $45,602 into the transaction as a fictitious down payment from defendant Guerriero;

h) All Defendants excluding BOA, by omitting any advices to plaintiff alternative to the foreclosure rescue scheme, misrepresented that their services were the only option to rescue the home and its equity from loss by foreclosure;

i) Ruffo and Default Services misrepresented to plaintiff and BOA that they were entitled to charge for any services in connection with a transaction that they knew to be unlawful in that fictitious down payments were made to secure the loan's institutional financing.

57. Defendants acted at all times relevant knowingly intending that plaintiff and his wife as his ostensible representative rely upon the transaction as a lawful by concealing their knowledge of the numerous falsehoods underlying the transaction including its supporting documents and financing.

58. With fraudulent intent or reckless disregard for the true nature of the transaction and intending that plaintiff would rely upon the transaction as beneficial and lawful, defendants knowingly failed to inform plaintiff of the transaction, the invalid legal documents, fictitious down payments, hidden charges, and knowingly obtained the fruits of the fraud as described aforesaid in the various fees extracted from the transaction.

59. The misrepresentations made by Defendants substantially contributed to plaintiff's decision through his ostensible representative to enter into the transaction and his representative justifiably relied upon the misrepresentations upon advice of the defendants to save their home.

60. By their actions described above, Defendants engaged in unconscionable commercial practices, deception, fraud, false pretense, false promise and/or misrepresentations and alternatively, or in addition, Defendants engaged in acts of omission, including but not limited to knowing concealment, suppression and omissions of material facts in connection with the mortgage transactions as described including but not limited to the fictitious down payment, hidden charges, and unlawful power of attorney.

61. Plaintiff was damaged by the loss of equity in his home resulting from the transaction which he could have captured by sale of the home had he been advised and consulted in this regard.

62. The foregoing acts by Defendants constitute violations of New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-2 at seq., as a result of which plaintiff suffered ascertainable loss.

**COUNT II - Conspiracy and Aiding/Abetting**

63. Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

64. At all times material, Defendants acted conspiratorially, in their design in concert, and/or aiding and abetting each other to perpetrate the harms and/or misconduct aforesaid all of is incorporated by reference.

65. The agreement among defendants constituted a combination of two or more persons acting with common purpose to do unlawful acts (use the pretext of a foreclosure rescue loan to earn fees and steal equity in property) and to do lawful acts (arrange purchase mortgage loans) by unlawful means (in violation of law as set forth in the foregoing Counts).

66. Defendants committed overt acts in pursuance of the common purpose as set forth above. Upon information and belief, the overt acts included:

    (a) Semptimphaler, Ruffo, and Truck used the cover of their associated corporate guises to conceal their scheme to extract cash from the property's equity in the form of loan related and other fees and charges to their respective corporate entities as described herein;

    (b) Law Firm and Lehman, without disclosing they were not licensed to practice law in the State of New Jersey, charged fees to plaintiff from the seller's loan proceeds in the transaction for services and representation that resulted in plaintiff entering into a transaction without his knowledge or authority through forged legal documents like the POA, falsified loan documents like the HUD-1, payments to defendants for services which did not benefit plaintiff as described above, and no consultation as to alternatives to a unlawful transaction;

(c) Truck, Samantha, Keller, Law Firm and Lehman agreed to make Law firm and Lehman act as attorneys in the transaction to give the appearance of propriety to the illegal scheme to defraud plaintiff;

(d) Law Firm and Lehman, as the sole attorneys involved in the transaction, gave the cover and color of legality to the transaction by failing to reveal the POA to be a forged illegal document, that the HUD-1 was falsified, and that they were not licensed to practice law in the State of New Jersey;

(e) Keller, individually and in her capacity as a notary, and John Doe, individually and as principal of defendant Samantha, forged the Power of Attorney and notarized the forged signature without the knowledge or consent of plaintiff;

(f) John Doe 1 and/or Truck, individually and as principal of defendant Samantha, rendered legal advice to plaintiff's wife to file a bankruptcy in her and plaintiff's name without legal authority or plaintiff's knowledge or consent;

(g) All Defendants excluding BOA disguised that Guerriero was not providing cash for the transaction by a paper fiction of a buyer's cash contribution on the HUD1 to obtain financing for the transaction;

(h) Guerriero signed a HUD1 for the transaction stating that they contributed over $40,000 to the transaction when they knew that to be false.

67.  Defendants had knowledge of their respective overt acts, omissions, evasions, and concealments, which have contributed to plaintiff's damages and losses as described aforesaid.

68.  Plaintiff was damaged by the illegal agreement among the Defendants in loss of the value of the home less any existing valid liens on the home plus severe damage to his credit by the filing of the bankruptcy petition counseled by the defendants.

16

## COUNT III - Professional Negligence
### *(Defendants Law firm and Lehman)*

69.     Paragraphs above are incorporated by reference as if fully set forth at length herein.

70.     Defendants accepted $1,200 from seller's loan proceeds at the closing thereby confirming action taken on behalf of plaintiff and proof of defendants undertaking representation of plaintiff's interests in the transaction.

71.     Defendants breached their duty of care to Plaintiff, were careless, reckless and negligent in their aforesaid actions, and in the following regards, respectively:

a) Failing to advise plaintiff that they were not barred to practice in the State of New Jersey;

b) Failing to consult directly with plaintiff concerning his awareness or intentions regarding the transaction and the Power of Attorney document used in the transaction;

c) Failing to provide appropriate and necessary legal advice concerning the foreclosure rescue transaction including but not limited to the disbursement of the funds from the transaction and fraudulent nature of the transaction involving used of a forged Power of Attorney and fictitious down payments by JTS Asset Group;

d) Failing to counsel plaintiff as to alternatives to foreclosure rescue including but not limited to selling the home to receive the equity over and above the existing liens;

e) Failing to otherwise protect the equity in plaintiff's home from theft by defendants involved in the transaction;

f) Failing to completely and clearly explain to Plaintiff, the nature of the legal services rendered for which they received $2,500.00;

g) Failing to completely and clearly explain the ramifications and consequences to Plaintiff of the foreclosure rescue transaction;

h) Other conduct that deviated from the applicable standard of care; and

17

      i)    Negligent entrustment.

72. As a direct and proximate result of Defendants, negligence, carelessness and recklessness, Plaintiff suffered all of the losses and damages set forth above.

## COUNT IV – Equitable Relief
*Plaintiff v. BOA/Guerriero*

73. Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

74. The sale/leaseback transaction was fraudulent and Guerriero and Bank of America knew or should have known same based on facts alleged herein.

75. The facts giving Bank of America notice set forth above or the principals of equity alone create a deed equitably vested back in plaintiff and an equitable mortgage in favor of Bank of America.

## COUNT V – Truth-in-Lending Act ("TILA")/Home Ownership and Equity Protection Act ("HOEPA")
*Plaintiff v. Bank of America/Guerriero*

76. Plaintiff incorporates by reference all prior paragraphs as if set forth at length herein.

77. At all times material, Defendant BOA, by its predecessor in interest, in the ordinary course of business, extended and/or arranged for the extension of consumer credit and/or offered to extend or arrange for the extension of such credit.

78. The Loan was an extension of a consumer line of credit secured by a mortgage on the residence and therefore subject to Plaintiff's right of rescission, and/or statutory and/or actual damages described by 15 U.S.C. §1635 and 12 C.F.R. §226.23.

79. In said loan transaction, Plaintiff did not receive the disclosures required by the Truth-In-Lending A ct ("TILA"), 15 U.S.C . §1601, et. seq., and Regulation Z of the Federal Reserve Board ("Regulation Z"), 12 C. F.R §226.1 et seq.

80. By failing to deliver any loan documents other than a partial HUD1 to plaintiff's wife at the closing, Defendant BOA failed to deliver all "material" disclosures required by TILA and Regulation Z, including but not limited to:

   a) Failing to properly and accurately disclose the " amount  financed," described in and in violation of Regulation Z §226.18(b) and 15 U.S.C. §1638(a)(2)(A);

   b) Failing to clearly and accurately disclose the " finance charge" described in and in violation of Regulation Z §226.4 and 15 U.S.C. §1638(a)(3);

   c) Failing to clearly and accurately disclose the " annual percentage rate," described in and in violation of Regular Z § 226.18(e) and 15 U.S.C. §1638(a)(4);

   d) Failing to comply with the special disclosure requirements of Regulation Z §226.32;

   e) Failing to timely provide each Plaintiff with two (2) copies of a Notice of his/her Rights to Rescind the Transaction and/or one (1) copy each of the form Disclosure pursuant to TILA and/or HOEPA.

81. Due to the violations of TILA and Regulation Z, Plaintiff has an ongoing right to rescind the transaction, and/or right to recoupment, statutory and actual damages.

**WHEREFORE,** Plaintiff seeks a judgment against all of the Defendants, as follows:

   A. Rescission of the loan transaction, including a declaration that Plaintiff is are not liable for any finance charges or other charges imposed at closing of the transaction;

   B. Termination of any security interest in the home created under the Loan transaction between Guerriero and BOA;

C. Declaration by the Court that deed in favor of defendant Guerriero is void and title is revested in plaintiff;

D. Declaration that an equitable Mortgage exists between plaintiff and BOA securing an amount of principal to be determined by litigation;

E. Actual damages in the amount of the equity in the home lost by plaintiff;

F. Treble actual damages;

G. Punitive damages;

H. Reasonable Attorneys fees, expenses, and costs of suit.

                WEISBERG LAW, P.C.

                /s/ Matthew B. Weisberg, Esquire
                MATTHEW B. WEISBERG, ESQUIRE
                Attorney for Plaintiff